# SEYFARTH SHAW LLP
### ATTORNEYS

620 Eighth Avenue

New York, New York 10018

(212) 218-5500

fax (212) 218-5526

www.seyfarth.com

Writer's direct phone

(212) 218-5523

Writer's e-mail
clowe@seyfarth.com

September 27, 2011

**BY FAX (212-805-7932)**



The Honorable Theodore H. Katz
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 17B
New York, New York 10007

Re:  Gersten v. Deloitte & Touche LLP et. al., 11 CV 2461 (RMB)(THK)
     James v. Deloitte & Touche LLP 11 CV 4454 (RMB)

Dear Judge Katz:

We represent Defendants Deloitte & Touche LLP and Deloitte LLP ("Defendants"), and we write in response to Plaintiffs' letter dated September 21, 2011, and submitted September 22, 2011. Plaintiffs have correctly noted that the parties have resolved a number of discovery disputes, and expect to resolve others without need for Court intervention. Concerning the specific issues that Plaintiffs now identify, Defendants respond as follows:

Plaintiffs' Proposed 30(b)(6) Deposition

Plaintiffs' insistence on a 30(b)(6) witness concerning Defendants' classification decisions (subject matters 1-3) only confirms that their request is designed to harass Defendants and subject them to unnecessary burden and expense. While classification of the putative class positions is certainly relevant to this litigation, we have repeatedly advised Plaintiffs' counsel that the original class determinations were made decades ago, and that there is no witness who could testify to those determinations, nor is there documentation to prepare a company representative for such testimony. Defendants have offered to stipulate to this fact, as well as to the fact that the classification was not reviewed during the relevant class period (since April 2008 in the FLSA action, and since April 2005 in the NY Labor Law action) other than by counsel in litigation. Requiring a witness to testify that Defendants do not know when or how the initial determination was made gives Plaintiffs nothing more than they would otherwise have under the proposed stipulation. Moreover, exemption status under federal and state law turns on the duties performed by putative class members. The duties performed by employees some 20-plus years ago are irrelevant.

Plaintiffs' Document Requests

Defendants' production of nearly 200,000 pages of relevant documents from the *Brady* action in the Northern District of California contains, among other things, the relevant job

Case 1:11-cv-04554-RMB   Document 71   Filed 10/03/11   Page 2 of 4



The Honorable Theodore H. Katz
September 27, 2011
Page 2

descriptions, training materials and policies from 2005-2010, and sample work papers. Defendants have also provided Plaintiffs' counsel with access to two audit industry packs, permitting them to walk through those industry packs in much the same way as a putative class member. Additionally, Defendants have produced documents concerning the named Plaintiffs and, on Friday, September 23, 2011, continued their rolling production of policy and training documents. We expect to complete our rolling production during the month of October.[1]

Plaintiffs' request that Defendants identify documents being withheld pursuant to one or more objections is both unnecessary and premature, as Defendants have already detailed the extent to which they are willing to produce documents. The parties should have an opportunity to meet and confer if Plaintiffs remain unclear as to portions of that proposal. Defendants respond to the specific document requests still in dispute as follows:

*Document Request Nos. 6 & 7:* Defendants have referred Plaintiffs to their offer to stipulate as described above, because these documents fall squarely within the proposed stipulation, inasmuch as Defendants have been unable to identify any such documents.

*Document Request No. 8:* Under the Supreme Court's decision in *Hoffman-LaRoche Inc, v. Sperling*, 493 U.S. 165, 173 (1989), this Court has the authority to facilitate and supervise class notice in a collective action such as this. The Court's involvement ensures a fair and timely notice that protects the rights of all parties. Plaintiffs' request for the names and addresses of potential opt-in plaintiffs prior to conditional certification strongly suggests that they intend to solicit clients outside of the court-approved notice process inasmuch as this information cannot be relevant to Plaintiffs' motion for conditional certification, which is fully briefed before Judge Berman. *See Charles v. Nationwide Mut. Ins. Co., Inc.*, Case No. 09-CV-04 (ARR), Docket No. 62 (E.D.N.Y. May 27, 2010) (plaintiff had not shown that the requested information was relevant); *Jenkins v. TJX Cos., Inc.*, No. CV 10-3753(ADS)(WDW), 2011 WL 1563677, at *1 (E.D.N.Y. Apr. 25, 2011).

*Document Request Nos. 14 & 20:* Plaintiffs' request for full access to "all databases to which Class Members had access during the Class Period and which contained the materials referred to in Requests 12 and 13" (Request No. 14) and "all databases containing the results of [any survey or analysis of job performance or job satisfaction]" (Request No. 20) is bereft of support and inconsistent with the Federal Rules of Civil Procedure (the "Federal Rules"), the applicable case law, and the teachings of the Sedona Conference, the leading e-discovery think-tank.

First, the Advisory Committee Notes (the "Notes") accompanying the 2006 Amendments to the Federal Rules make clear that "[t]he addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system." The Notes go on to confirm that "[t]he rule does not require a party to produce electronically stored information in the form in which it is ordinarily maintained, so long as it is produced in a reasonably usable form."

---

[1] The Parties are currently negotiating the number of custodians and scope of electronically stored information ("ESI") as it pertains to email collection and review. Accordingly, our estimated deadline for Defendants' rolling production necessarily does not include such ESI.



The Honorable Theodore H. Katz
September 27, 2011
Page 3

The leading case in this area, *In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003), reached a similar conclusion. There, the court held that "Rule 34(a) does not grant unrestricted, direct access to a respondent's database compilations"; instead, it "allows the responding party to search his records to produce the relevant, required data. [It] does not give the requesting party the right to conduct the actual search." *Id.* at 1316-17. Courts in this district have held likewise. *See, e.g., Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 169 (S.D.N.Y. 2004).

The Sedona Conference recently confirmed what is already apparent from the case law and Federal Rules, that "[a]bsent the parties' specific agreement, a requesting party is rarely granted permission to conduct a direct examination of a responding party's database to view or obtain information stored within it," and reiterated for good measure that "[d]irect access to a party's database systems is disfavored and has been granted over objection only in extraordinary circumstances." The Sedona Conference Database Principles: Addressing the Preservation & Production of Databases & Database Information in Civil Litigation (March 2011) (available at http://www.thesedonaconference.org/publications_html?grp=wgs110).

This case presents no extraordinary circumstances. Plaintiffs implicitly acknowledge this fact by arguing only that these databases "are freely accessed by tens of thousands of Defendants' personnel," as though the size of Deloitte somehow bears on this determination. It does not. As described above, Defendants have already gone above and beyond by providing Plaintiffs direct access to a sampling of AS/2 industry packs.

Finally, Plaintiffs' allegation that Defendants "cherry-pick[ed]" the audit materials produced thus far is completely disingenuous, not only because it was Plaintiffs who requested that the *Brady* production be re-produced in full here, but also because Plaintiffs have ignored Defendants' August 26, 2011 proposal to produce, for two audits per Plaintiff, the working paper sections that Plaintiffs prepared or reviewed, as well as the email correspondence between Plaintiffs and their feedback providers regarding those working paper sections. [*Agreed*]

*Document Request No. 22:* Defendants fail to see how a document discussing the scope of discretion and judgment of employees of PricewaterhouseCoopers, Ernst & Young or KPMG will lead to the discovery of admissible evidence. This case turns on the job duties of Defendants' employees, not those of their competitors.

*Document Request No. 27:* Neither Deloitte & Touche LLP nor Deloitte LLP offers consulting services in the nature of this request. To the extent that Plaintiffs seek such information from any other Deloitte entity, Defendants object on the grounds that those entities are not parties to this action, nor can they be as the putative class was employed by Deloitte & Touche LLP and no other Deloitte entity, including Defendant Deloitte LLP. [*Okay*]

*Document Request No. 28:* Plaintiffs have not included interns in their class definition and therefore information concerning interns is beyond the scope of this litigation. [*Okay*]



The Honorable Theodore H. Katz
September 27, 2011
Page 4

Thank you for Your Honor's attention to this matter.

Respectfully submitted,

SEYFARTH SHAW LLP

Christopher H. Lowe

cc:  Max Folkenflik (via email)
H. Tim Hoffman (via email)
Justin M. Swartz (via email)
Ossai Miazad (via email)
Peter A. Walker (via email)

*The Court has considered the parties' submissions and its rulings are set forth in the margins above.*

9/30/11

**SO ORDERED**

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

13787746v.2